UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY HARDY,

    Plaintiff,

v.

ROBERT VIETA,

    Defendant.
                                      /

Case No. 02-cv-40255

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR A NEW TRIAL** (docket no. 215)

Plaintiff Gregory Hardy, a prisoner of the State of Michigan, sought to recover for an alleged violation of the Eighth Amendment in the form of an assault by Robert Vieta, one of the guards at a facility where Mr. Hardy was incarcerated. A jury trial was held on January 20th and 21st, 2009, and the jury returned a verdict in favor of Mr. Vieta. Mr Hardy now moves for a new trial. For the reasons that follow, the Court will deny the motion.

Federal Rule of Civil Procedure 59(a)(1) provides that: "[t]he court may, on motion, grant a new trial on all or some of the issues — and to any party — as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." According to the Sixth Circuit,

> Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a "seriously erroneous result" as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.

*Holmes v. City of Massillon, Ohio*, 78 F. 3d 1041, 1045-46 (6th Cir. 1996) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). Here, Hardy claims that the trial was unfair in four different ways, and that the verdict was against the weight of the evidence.

First, Hardy argues that the jury was prejudiced by a reference that Vieta's attorney made to drug use by Mr. Hardy. Specifically, Vieta's attorney asked Mr. Hardy whether he had suffered from "a drug problem" before being incarcerated. Because Hardy's counsel immediately objected, and the Court sustained the objection, Hardy never answered the question. Nevertheless, Hardy maintains that this suggestion to the jury prejudiced him, not least by requiring his attorney to engage in what might have appeared to the jury as a cover-up for past drug use. Hardy further notes that in an oral ruling before trial began that morning, the Court had specifically excluded testimony as "prejudicial material" about Hardy's "behavior outside of prison before he was convicted."

Vieta responds that the Court's ruling came after a discussion that had focused only on the conduct that Hardy was actually convicted for. He further argues that testimony as to Hardy's prior drug use would have been relevant to the case, because after the time of the alleged Eighth Amendment violation Hardy made requests for stronger painkillers to prison medical officials, which Hardy claims are evidence that the assault actually occurred and injured him. Evidence of Hardy's prior drug use would have provided an alternative explanation for these requests. Thus, says Vieta, although the Court ultimately excluded the testimony, his counsel's initial inquiry about it was not unfair to Mr. Hardy in such a way as to require a new trial.

The Court finds the plaintiff's argument to be without merit. The question was asked, the objection was timely lodged and it was sustained. The Court instructed the jury several times that lawyer questions and objections thereto were not evidence and the Court further instructed the jury to decide the facts based solely on the evidence. Plaintiff's counsel did not unduly or unfairly press the issue and the Court finds no basis for relief under rule 59 or any relevant appellate precedent.

2

Second, Hardy argues that the Court erred in excluding the written deposition testimony of one James Mathieu, who was incarcerated with Hardy and who claimed to be an eyewitness of the assault that forms the basis for Hardy's allegations in this suit. Mr. Mathieu died before this case could be brought to trial, and Hardy therefore argues that his deposition responses should have been admitted in evidence under the "former testimony" exception to the hearsay rule.

Federal Rule of Evidence 804(b)(1) provides that the hearsay rule does not exclude from trial

> [t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

In many situations, this rule will permit admission of the deposition testimony of a deceased witness, because the opponent of the party seeking admission will typically have been present at the deposition and thus have had an opportunity to cross-examine. Mathieu's deposition testimony was somewhat out of the ordinary in that it was a response to written deposition questions, as permitted by Federal Rule of Civil Procedure 31. That rule requires that written deposition questions be served not only on the deponent but also on other the other parties to the case, Fed. R. Civ. P. 31(a)(3), who are then permitted to submit written cross and recross questions, *id.* R. 31(a)(5). What little case law is available suggests that this is indeed sufficient opportunity to cross examine, under Rule of Evidence 804(b)(1). *See United States v. Salim,* 855 F. 2d 944, 953-54 (2d Cir. 1988) (deposition taken on written questions in France, purusant to letter rogatory, was admissible despite opposing party being limited to written cross-questions); *United States v. Burbank*, 907 F. 2d 1140, at *5 (Table, 4th Cir. 1990) (noting in dicta that cross-examination by written

3

questions "likely" would have rendered a written deposition admissible under Rule 804(b)(1) as former testimony).

Here, Mathieu's deposition was taken not in the instant case but in a separate suit that apparently arose out of the same facts, and in which Mr. Vieta was also a defendant. *See Hardy v. Grayson*, no. 99-cv-76348 (E.D. Mich.). There is no evidence as to whether the deposition questions were properly served. Even assuming that they were, however, it does not appear that the deposition of Mr. Mathieu was taken "in compliance with law," as required for its admissibility by Rule 804(b)(1). This is because Mr. Mathieu was in prison at the time Hardy submitted the deposition questions to him. Federal Rule of Civil Procedure 31(a)(2)(B) provides that a prisoner may be deposed by written questions only with leave of the Court. This Court never granted leave for such a deposition of Mr. Mathieu. The *Grayson* court did grant such leave, *Hardy v. Grayson*, no. 99-cv-76348, docket no. 137, at *1 (E.D. Mich. Jan. 30, 2002),  but it did so more than four months after Mathieu responded to the Hardy's set of questions, and did not in any way legitimize those questions or even demonstrate that the court was aware of their existence. Accordingly, there is no indication either that Mathieu's deposition was taken in compliance with law, or that Vieta ever had an opportunity to lawfully cross-examine Mathieu on the questions propounded by Hardy.[1] Its contents are therefore not admissible as former testimony.

Third, Hardy objects that the trial was unfair because the mother of one of the jurors attended the proceedings,[2] and thus was privy to several conversations between counsel

---

[1] There is no evidence either way as to whether the written deposition questions were properly served on Vieta. But even if they were, Vieta could not legitimately have served cross-questions on Mathieu without leave of the court, which was never given.

[2] Neither the Court nor (apparently) the parties or their counsel were aware that this member of the gallery was related to one of the jurors until after the trial.

4

and the Court during times when the jury was excused. Hardy notes that these conversations often included discussions of facts highly prejudicial to him, and asserts that the mother must have communicated these facts to her daughter during the course of the trial. Hardy has no evidence that any such conversations occurred between the mother and her daughter, however, and the Court gave very clear instructions to the jury at multiple points during the trial that they were not to discuss the case with anyone.

The Court finds no merit in the plainitff's contention that the juror's mother's presence led to an unfair result, especially in light of the facts that no legal authority supports the plaintiff's position and that there is no evidence whatever that the juror spoke with her mother about the trial. The Court will not grant the motion for a new trial on this basis.

Fourth, Hardy asserts unfairness in the trial because one of the medical records adduced in evidence purported to pertain not to the plaintiff, Gregory Hardy, but to a different prisoner named James Hardy. Th record in question was dated 12 days before Vieta allegedly assaulted Gregory Hardy, and noted that "Hardy" was complaining of "neck pain" on that date. It was used by the defense to suggest that the injuries Gregory Hardy complained of could not have resulted from an assault, because they preexisted the alleged date of the assault.

In response, Vieta notes that the mix-up was actually discovered and clarified during the course of the trial. *See transcrp.*, docket no. 211, pp. 129-30. Plaintiff's counsel had ample opportunity to object to the materials, cross examine on them and to argue the issue during summation. Again, the jury was only instructed to decide the issues based upon items that were properly in evidence. While the Court finds that the state lawyers representing Vieta certainly made a mistake in terms of using the wrong prisoner's materials, the Court also notes that the lawyers worked with the other side to identify the

5

mistake and to take efforts to make sure the jury was not misinformed. Based on the analysis above as well as the transcript of the proceedings which dealt with how the materials were handled, the Court declines to find that the trial was unfair to Hardy or that the mistake led to the proceedings being influenced by prejudice or bias. No new trial will be granted on this basis.

Finally, Hardy maintains that the jury's verdict was simply against the great weight of the evidence. In this regard, he argues that he presented the testimony of several eyewitnesses in support of his claims of Vieta's continued harassment of and assault upon him, but that in response Vieta offered only his own uncorroborated denial, which was limited to the assault and did not even address the harassment.

Hardy's argument is not persuasive. Both parties put on a full case over the course of two days of trial time and both sides fully cross examined the other side's witnesses. Numerous pieces of documentary evidence were offered and received. Various stipulations and past testimony were read to the jury. It is apparent that the jury took ample time to sift through the evidence that existed at the time and to render what it thought to be a proper verdict based upon that evidence. The Court finds that sufficient evidence was presented by the defense to support both its case and the verdict and the Court will not disturb the jury's finding based on arguments to the contrary.

**WHEREFORE**, it is **ORDERED** that, for all of the reasons set forth above, the plaintiff's motion for a new trial pursuant to Fed. R. Civ. P. 59 (a) is hereby **DENIED.**

**SO ORDERED.**

                                                      s/Stephen J. Murphy, III
                                                      STEPHEN J. MURPHY, III
                                                      United States District Judge

Dated: July 29, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 29, 2009, by electronic and/or ordinary mail.

                                          Alissa Greer
                                          Case Manager